UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14034-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA

vs.

JOSHUA YOUNG,

    **Defendant.**
_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR VARIANCE AND SENTENCING MEMORANDUM

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds to Joshua YOUNG's ("Defendant") motion for downward variance and sentencing memorandum (DE 25). The United States opposes Defendant's motion and files the below arguments regarding sentencing:

### BACKGROUND[1]

Defendant is the president and manager of SFfobs, Inc., which is a business that provides locksmith services, replacement vehicle keys, vehicle remotes, and electronic vehicle proximity keys. SFfobs buys products from wholesalers and retails to locksmiths, and Defendant does all the purchasing for the business. SFfobs has a website, www.sffobsinc.com, and a physical storefront in Port St. Lucie.

On March 12, 2021, Homeland Security Investigations ("HSI"), Fort Pierce Office, received information from Ford Motors, who reported that SFfobs was advertising, on its website,

---

[1] As the PSI (DE 23) and factual proffer (DE 20) provide a detailed factual background of the case, this memorandum will not repeat every fact.

original equipment manufacturer ("OEM")[2] proximity keys[3] for new Ford Mach E Mustang vehicles. At the time, Mach E Mustang proximity keys had not been released to the public and were produced at a single plant in Mexico.

On March 16, 2021, HSI special agents and a Ford investigator went to the SFfobs location and spoke with Defendant. Young stated that he received a "cease and desist" letter from Nissan several years ago, after which he claimed that he stopped selling Nissan key fobs. Young stated that he purchased all his keys from locksmiths, salvage yards, car dealerships, and other people who "do the same thing I do." He admitted that he swapped out the key blades, reprogrammed the computer chips, and replaced the outer shells for resale. Young told HSI that his industry was "a huge gray area" in terms of legality. When informed that the Mach E keys were counterfeit, Young claimed that he never sold counterfeit keys and would never knowingly do so.

On May 25, 2021, agents executed a federal search warrant at SFfobs' Port St. Lucie physical location (21-032-MJ-SMM). During the search, HSI agents were assisted by investigators for Ford, Stellantis[4], Nissan, Toyota, and General Motors. Pursuant to the warrant, agents seized many key fobs and keys that were suspected to be counterfeit or stolen, unbranded key fobs, loose manufacturer logos, as well as digital devices. Investigators recovered approximately 822 counterfeit emblems, key fobs, and keys that were infringing on marks owned by GM Chevrolet, Nissan, Toyota, and Ford. Agents also recovered numerous genuine key fobs that were determined to be stolen.

On May 25, 2021, during the search warrant execution, Defendant consented to a search

---

[2] An OEM manufactures components or products that are used in another company's end product, verses products that are sold directly to the end consumer.
[3] Proximity keys are key fobs that communicate with a vehicle's entry and ignition system, allowing for users to lock and unlock vehicle doors, as well as start the engine, when the fob is in range of the vehicle, without physically inserting a traditional key blade.
[4] Stellantis is a global automotive company that owns several brands, including Chrysler, Dodge, Fiat, Ram, Jeep, Alfa Romeo, and Maserati.

of his cell phone, which agents later searched. In one recovered conversation, Defendant appears to be complaining to a supplier that Chevrolet key fobs were "not original." Defendant said that "[t]his will be hard to sell," because his customers would complain that the fob was not original. Defendant then said "[i]t's ok. Next time I would need to see the full remote inside and out[.]"

In another conversation with an apparent supplier, Defendant said that he wants the bags unopened and sealed. The supplier replied that s/he cannot then cover the logo with a black sticker[5], to which Defendant instructed him/her to put them in black bags. Defendant later complained to the supplier that the products were not OEM originals and that his/her manufacturer lied to him/her. Despite this, Defendant continued to do business with this supplier.

In July of 2020, Defendant bought a set of unknown Jeep and Ford key fobs from this same supplier for $6,121.50 and instructed him/her to cover the logos with black stickers. Defendant told the supplier to declare $350 for customs. Later, the supplier informed Defendant that the shipment was seized by customs, and Defendant explained that he needed a letter to prove the items were not counterfeit; the supplier stated that s/he could not prove that.

In another conversation with an unknown individual, Defendant complained that unknown key fobs that he had purchased from the individual were counterfeit. Defendant then agreed to keep them, saying he could "make them work."

On June 9, 2022, Defendant was indicted by a grand jury in the Southern District of Florida (DE 1). The indictment charged Defendant with five counts of trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a)(1) (DE 1). On October 20, 2022, Defendant pled guilty to count 5 of the Indictment (DE 18).

On January 6, 2022, Defendant filed a motion for variance and sentencing memorandum

---

[5] Black tape is commonly placed over a logo in order for a counterfeit item to clear customs.

(DE 25). In his motion, Defendant cites to his lack of criminal history, his acceptance of responsibility, and his need to provide for his children, among other factors (DE 25). Defendant bases his motion on the sentencing factors outlined in 18 U.S.C. § 3553(a) (DE 25).

## LAW AND ANALYSIS

Under 18 U.S.C. § 3553(a), the Court must impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes laid out by Congress. The government agrees with many of the facts Defendant included in his motion; however, the government disagrees with the weight Defendant assigns to these factors and the ultimate request. While the Court must consider all of the § 3553(a) factors in determining a sentence, the following will address those factors that are, in the government's view, most relevant:

a) <u>The nature and circumstances of the offense.</u>

By Defendant's admission to law enforcement, Defendant previously received a cease-and-desist letter from a car manufacturer, but this did not stop Defendant from selling counterfeit keys and key fobs. The evidence included in the factual proffer and PSI show that Defendant was acquiring merchandise from clearly questionable sources. In some instances, Defendant confronted his sources about the illegal nature of the products, and yet Defendant continued to sell the items and deal with the sources. In the worst cases, Defendant took active steps to avoid his products being discovered and confiscated.

As shown by the victim impact statements, the trafficking in counterfeit goods threatens consumer safety and undermines consumer confidence. In the aggregate, counterfeiters can damage the economy and Americans' trust in the marketplace. Defendant participated in the counterfeit market and actively avoided detection.

b) <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.</u>

For the reasons stated above, Defendant's offense is serious, and the sentence should so reflect.

Regarding respect for the law, Defendant sold counterfeit products and took steps to avoid detection. The anti-counterfeit laws, and their potential penalties, apparently had little effect on Defendant's decision making. Prior to agents searching his business, Defendant did not demonstrate a respect for the law as it relates to trademarks and counterfeiting. It appears that Defendant did not believe that his transgressions were significant or serious, nor that the counterfeit laws would be enforced. The Court's sentence should correct these misapprehensions.

The Court's sentence should also be aimed at providing just punishment for Defendant's offense. A probation sentence would be insufficient to achieve this goal. Defendant trafficked in counterfeit goods, was warned against doing so by an auto manufacturer, continued to traffic in such goods, and took steps to defeat border detection efforts. In so doing, Defendant participated in an illegal market that damages legitimate brands, customers' trust in those brands, and the safety of American consumers.

c) <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

The victim impact statements filed with the Court show the need for deterrence of future counterfeiters. Some of these offenders may believe that the harm of counterfeiting is not serious, or that law enforcement will not take their actions seriously, both of which would be misjudgments.

As Ford outlines, counterfeit trafficking "damages Ford's reputation and may endanger customers" (DE 26-2:1). Counterfeiting operations result in "consumer confusion and have harmed Ford's business and the consumer goodwill associated with the Ford brand" (DE 26-2:2), a brand crafted over a century.

But more importantly, keys and key fobs perform important functions in the operation of motor vehicles, such as locking/unlocking, ignition, alarms, etc. When a consumer purchases a key fob containing the mark of a trusted automotive manufacturer, the consumer believes that that product has undergone the quality control and testing procedures associated with the manufacturer and complies with government regulations. Moreover, the consumer knows that if something goes wrong, he or she can hold that manufacturer accountable and avail his or herself of any legal remedies. Consumers also know that if a manufacturer discovers a defect, they will (or should) issue a recall.

But in the case of counterfeit products, consumers have none of the above protections or remedies, despite their belief otherwise. Worse, faulty and untested products may fail, leaving consumers in a precarious position or having to repurchase products. Essentially, counterfeiters dupe consumers into buying products under the false belief that these products come with the accustomed quality, oversight, and remedies, and usually at a higher price point.

For these reasons, the Court should fashion a sentence that deters Americans from trafficking in counterfeit goods, thus helping to protect businesses and their consumers.

*This space intentionally left blank.*

CONCLUSION

For the aforementioned reasons, the United States respectfully requests that this Court DENY Defendant's request for a downward variance.

                              Respectfully submitted,

                              MARKENZY LAPOINTE
                              UNITED STATES ATTORNEY

By: *s/Justin L. Hoover*
     Justin L. Hoover
     Court ID A5502493
     Assistant United States Attorney
     Justin.Hoover@usdoj.gov
     United States Attorney's Office
     101 South US Highway 1, Suite 3100
     Fort Pierce, Florida 34950
     Telephone:  772-466-0899

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on January 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF to be served on all parties.

    *s/Justin L. Hoover*
    Justin L. Hoover
    Assistant United States Attorney